UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| TONY PHELPS, | ) | |
|---|---|---|
| Plaintiff, | ) | JURY DEMAND |
| vs. | ) | NO. 1:21-cv-92 |
| TEKSYSTEMS, INC. and U.S. XPRESS, INC., | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Comes now Plaintiff Tony Phelps ("Plaintiff"), by and through his attorneys, and files this First Amended Complaint against Defendants Teksystems, Inc. and U.S. Xpress, Inc. ("Defendant" or "Defendants") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* showing the Court as follows:

### I. JURISDICTION

1. This Court has jurisdiction over this action for unpaid overtime pay, back pay, liquidated damages, compensatory damages, punitive damages, injunctive relief, and related relief by virtue of the provisions of 28 U.S.C. §1331, §1337 and §1367 without regard to the citizenship of the parties or amount in controversy.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391.

### II. NATURE OF PROCEEDING

3. This is an action to recover unpaid overtime compensation under the FLSA and to redress unlawful retaliation for exercising rights under 29 U.S.C. §206, §207 and §215.

### III. PARTIES

4. Plaintiff was at time material a citizen of the State of Tennessee. Plaintiff now resides in the State of South Carolina. The matters giving rise to this action occurred within this District and Division.

5. Defendant Teksystems, Inc. ("Teksystems") is a corporation organized under the laws of Maryland. Teksystems does business in the State of Tennessee. Its Registered Agent for service of process in this State is Corporation Service Company, 2908 Poston Ave., Nashville, TN 37203-1312.

6. Defendant U.S. Xpress, Inc. (U.S. Xpress) is a corporation organized under the laws of the State of Nevada. U.S. Xpress does business in the State of Tennessee. It has its corporate headquarters and principal place of business in this District and Division. Its Registered Agent for Service of Process is also Corporation Service Company.

### IV. FACTUAL BASIS

7. Teksystems is an employment agency. From about November of 2019 to about August of 2020 Teksystems employed Plaintiff for the purpose of working for, and under the supervision of, U.S. Xpress. Plaintiff was paid an hourly rate for this work. Once Plaintiff was assigned to work for U.S. Xpress, Plaintiff received his work tasks from U.S. Xpress but received his pay from Teksystems. Basically, U.S. Xpress was paying Teksystems for Plaintiff's work plus compensating Teksystems for arranging for Plaintiff to perform that work. Nevertheless, both Defendants maintained control over important terms and conditions of employment, particularly with respect to compensation.

8. U.S. Xpress assigned Plaintiff tasks that often required him to work more than 40 hours per week. However, U.S. Xpress refused to pay premium pay for overtime work. Teksystems

2

sometimes paid Plaintiff some of the overtime he had earned, but not always and not all. Both Teksystems and U.S. Xpress had full knowledge that Plaintiff was being denied overtime pay.

9. Defendants decided that during Plaintiff's temporary assignment with U.S. Xpress: (1) Plaintiff would work the required overtime hours; (2) Teksystems would bill U.S. Xpress for only 40 hours in a work week, regardless of how many overtime hours Plaintiff worked; (3) Plaintiff would report the actual hours worked to Teksystems; and (4) Teksystems would occasionally pay Plaintiff overtime pay for overtime hours he had worked. Both U.S. Xpress and Teksystems had full knowledge of this arrangement. In fact, Teksystems acknowledged to Phelps that it owed the premium pay for the overtime work and promised to properly compensate him.

10. Even when Teksystems did pay some overtime to Plaintiff, the payments for such premium pay were not always made within either the week in which those overtime hours were worked or in the second week of a two-week pay period in which the overtime hours were worked in the first week.

11. Phelps did a good job performing work for U.S. Xpress. On about June 10, 2020, U.S. Xpress made Plaintiff an offer of permanent employment after the Teksystems project was completed. Plaintiff accepted this offer.

12. As the time for Plaintiff to transition from joint employment by Teksystems and U.S. Xpress to an U.S. Xpress employee approached, Phelps inquired of Teksystems when he would receive the overtime pay he had earned and had been promised. Teksystems then approached U.S. Xpress and asked that it reimburse Teksystems for this cost.

13. U.S. Xpress refused to reimburse Teksystems for Plaintiff's overtime pay. Also, because Plaintiff asked for his overtime pay, U.S. Xpress retaliated against Plaintiff by withdrawing its offer of permanent employment.

14. Teksystems then refused to pay Plaintiff the remainder of his overtime pay. Also, because Plaintiff asked for his overtime pay, U.S. Xpress also retaliated against Plaintiff by refusing to refer him to other jobs with Teksystems customers.

15. Plaintiff has lost considerable pay and benefits as the result of these unlawful acts.

16. Defendants have asserted and given notice that they intend to enforce a purported agreement requiring arbitration of the claims asserted herein. A true copy of the purported agreement ("Agreement") is attached hereto as "Exhibit A".

17. The Agreement requires arbitration to be conducted by the Judicial Arbitration and Mediation Services, referred to as JAMS.

18. JAMS requires that attorneys representing parties in JAMS arbitrations agree to be responsible for the payment of the arbitrator's fees if so ordered by the arbitrator. Arbitrator fees vary, but upon information and belief, it is not uncommon for an arbitrator to charge well over $30,000 in a single employee case. Requiring Tennessee-licensed attorneys to agree to such a policy would expose that attorney to a risk of sanction by the Tennessee Board of Professional Responsibility. It would also severely reduce the number of attorneys willing to represent an employment law client before JAMS. Arbitration awards are virtually non-reviewable in court, and an attorney representing a client before JAMS is exposed to significant and arbitrary risks.

19. JAMS has an arbitration panel consisting of approximately 400 arbitrators. JAMS is actually owned by many of the arbitrators on its arbitration roster. JAMS makes profits from administrative fees charged to parties. Under the Agreement, Defendant TekSystems has agreed to pay most of the administrative fees.

20. According to a submission made to the United States Supreme Court on behalf of JAMS, it processes approximately 15,000 arbitrations each year.

21. According to disclosures made by JAMS, the law firm of Littler Mendelson has had 14,308 cases administered by JAMS in the last five years. Thus, upon information and belief, that law firm was involved in over 19% of the JAMS caseload over the most recent five-year period.

22. Defendant TekSystems is represented by Littler Mendelson.

23. When an arbitration case is assigned to JAMS, its staff selects arbitrators on a seven-person list that is then supplied to the parties. They are required to "strike" a total of six names, with the last person remaining appointed as the arbitrator.

24. JAMS does not make arbitration awards public or otherwise available to parties striking names on a panel. Thus, when deciding which names to strike from the panel, attorneys in the Littler firm will have access to many prior arbitration awards and opinions, many of which will necessarily be authored by members of the panel suppled to the parties. An individual party will not have access to that information and will be at a significant disadvantage when striking names. Information concerning the proposed arbitrators available from other sources is extremely limited and is not nearly as valuable as that contained in prior JAMS arbitration awards available to the attorneys representing TekSystems.

25. The arbitrators on the JAMS panel are not independent and are presumably biased in favor of parties represented by Littler for the following reasons:

    a. JAMS arbitrators are aware that Littler represents employers in a large number of JAMS cases nationwide. Thus, they are aware that Littler has the power to avoid selecting them to serve in almost 20% of the JAMS-administered arbitration cases. Deciding a case against a Littler-represented party could result in the non-selection in many future cases. That would result in the loss of considerable income for the arbitrator. On the other hand, the Agreement prevents an employee from making public virtually everything related to the

5

Case 1:21-cv-00092-KAC-CHS   Document 19   Filed 06/21/21   Page 5 of 9   PageID #: 59

arbitration, including the award. Thus, attorneys representing Plaintiffs will not have access to JAMS awards.

       b.      Upon information and belief, Littler counsels its clients concerning arbitration as an alternative method of dispute resolution. If Littler determined that the JAMS arbitration panel included arbitrators who would not be suitable for cases involving its management clients, its duty of care as a provider of legal services would require it to advise clients to not include JAMS in the arbitration agreements that employers require employees to execute. This obvious fact is known to JAMS, to its panel members, and particularly to its panel members who are owners of JAMS. It is in the financial interest of JAMS, its panel members who are its owners, and its other panel members to not do anything that could result in Littler directing its clients not to use JAMS in their arbitration agreements.

       c.      Any arbitrator on a JAMS panel knows that an award against a Littler-represented party could result in significantly diminished future selections and a corresponding loss of income.

       d.      JAMS itself has a financial interest in continuing business with parties utilizing its services. Its staff, whose members are presumably not bound by any regulatory imposed ethical rules, select seven-member panels submitted to parties. JAMS has a financial interest in providing panels of arbitrators who would be inclined to favor the Littler-represented party in each case.

26.    If there is not actual bias on the part of JAMS and its arbitrators, its ownership, its business, and its policies create a significant appearance of impropriety.

27.    The matters set forth in paragraphs 20 through 26, *supra*, were not disclosed by Defendant TekSystems when it provided its Agreement to Plaintiff for his electronic signature.

28. If Defendant TekSystems was aware of the matters set forth above, then it was guilty of either negligent or intentional misrepresentation by its failure to disclose them to Plaintiff.

29. If Defendant TekSystems was unaware of the matters set forth above when the Agreement was presented to Plaintiff, then the parties entered into the Agreement as the result of mutual mistake.

## V. CLAIMS

### Claim 1: Pay Violation (FLSA)

30. Defendants violated Plaintiff's rights under the FLSA by refusing to pay him for hours over 40 in a work week and at the rate of one-and-one-half the regular rate of pay in violation of Section 7 of the Fair Labor Standards Act, as amended, 29 U.S.C. §207.

### Claim 2: Retaliation (FLSA)

31. Defendants retaliated against Plaintiff by refusing to assign or refer Plaintiff to other Teksystems customers and by withdrawing an offer of permanent employment with Enterprises in violation of 29 U.S.C. §215.

### Claim 3: Breach of Contract

32. Defendants violated their contracts with Plaintiff by failing to pay Plaintiff at a rate of pay for each hour worked and for the payment of overtime pay at the federally prescribed premium rate for each hour worked in excess of 40 in each week and by failing to employ Plaintiff and assign him work.

### Claim 4: Unjust Enrichment

33. Defendants were unjustly enriched by refusing to pay all monies due to Plaintiff under their contracts and under applicable law.

### *Claim 5: Declaratory Judgment*

34. The Arbitration Agreement was entered into as the result of intentional or negligent misrepresentation or, alternatively, as a result of a mutual mistake.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff accordingly prays for the following relief:

a. Judgment for the unpaid overtime hours worked by Plaintiff;

b. An additional amount as liquidated damages;

c. An order requiring Enterprises to employ Plaintiff in the position it had previously offered to him or, if the position is no longer available, front pay and benefits;

d. Judgment for Plaintiff's loss of earnings and the value of lost benefits;

e. Judgment for an equal amount as liquidated damages;

f. Compensatory damages for Defendants' violation of section 15 of the Fair Labor Standards Act;

g. Attorney fees and costs;

h. Pursuant to 28 USC 2201, *et seq.*, a declaratory judgment declaring that the Arbitration Agreement between the parties is void and unenforceable;

i. A jury trial on all triable claims, including, but not limited to, a jury trial concerning all issues of fact incorporated in Plaintiff's *Claim 5*; and

j. Such further relief to which Plaintiff may be applicable and proper.

BURNETTE DOBSON & PINCHAK

By: __s/ *Frank P. Pinchak*_____
    Frank P. Pinchak, BPR No. 002094
    Harry F. Burnette, BPR No. 004803
    Madison Hahn, BPR No. 037860
    Attorneys for Plaintiff
    711 Cherry Street
    Chattanooga, TN 37402
    Phone: (423) 266-2121
    Fax: (423) 266-3324
    fpinchak@bdplawfirm.com
    hburnette@bdplawfirm.com
    mhahn@bdplawfirm.com

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing pleading was served via the Court's ECF system to all parties who have entered an appearance in this matter.

This the 21st day of June, 2021.

**BURNETTE, DOBSON & PINCHAK**

By:_____s/ *Frank P. Pinchak*_____

9

Case 1:21-cv-00092-KAC-CHS   Document 19   Filed 06/21/21   Page 9 of 9   PageID #: 63